```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
 2

 3    UNITED STATES OF AMERICA,         )
                                        )
 4                 Plaintiff            )
                                        )
 5          -VS-                        )   Criminal No. 17-10281-PBS
                                        )   Pages 1 - 44
 6    DALNOVIS DELAROS ARIAS and        )
      MINERVA RUIZ,                     )
 7                                      )
                   Defendants           )
 8

 9

10         FINAL PRETRIAL CONFERENCE/RULE 11 HEARING

11

12

13         BEFORE THE HONORABLE PATTI B. SARIS
              UNITED STATES CHIEF DISTRICT JUDGE
14

15

16                          United States District Court
                            1 Courthouse Way, Courtroom 19
17                          Boston, Massachusetts  02210
                            November 26, 2018, 9:53 a.m.
18

19

20

21

22                      LEE A. MARZILLI
23                   OFFICIAL COURT REPORTER
                  United States District Court
24                1 Courthouse Way, Room 7200
                      Boston, MA  02210
25                       (617)345-6787
```

1    A P P E A R A N C E S:

2         LEAH B. FOLEY, ESQ. and LAUREN GRABER, ESQ.,
     Assistant United States Attorneys, Office of the United States
3    Attorney, 1 Courthouse Way, Room 9200, Boston, Massachusetts,
     02210, for the Plaintiff.
4
          DAVID J. GRIMALDI, ESQ., David J. Grimaldi, P.C.,
5    675 Massachusetts Avenue, Cambridge, Massachusetts, 02139, for
     the Defendant, Dalnovis Delarosa Arias.
6
          WILLIAM F. BOLAND, ESQ. and (By phone) SCOTT F. GLEASON,
7    ESQ., Gleason Law Offices, P.C., 163 Merrimack Street,
     Haverhill, Massachusetts, 01830, for the Defendant,
8    Minerva Ruiz.

9    ALSO PRESENT:  Gabrial Hadad, Spanish Interpreter.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    P R O C E E D I N G S
2            THE CLERK:  Court calls Criminal Action 17-10281, the
3   United States v. Arias and Ruiz.  Could counsel please identify
4   themselves.
5            MS. FOLEY:  Good morning, your Honor.  Leah Foley for
6   the United States.
7            THE COURT:  Good morning.
8            MS. GRABER:  Good morning.  Lauren Graber for the
9   United States.
10           THE COURT:  Thank you.
11           MR. GRIMALDI:  Good morning, your Honor.  David
12  Grimaldi for Mr. Delarosa Arias.
13           THE COURT:  All right.
14           MR. BOLAND:  Good morning, your Honor.  Attorney
15  William Boland for Ms. Ruiz who's present, appearing for
16  Attorney Gleason, who I believe is still on the phone.
17           THE COURT:  Hey, Mr. Gleason, can you hear us?
18           MR. GLEASON:  I can, your Honor.  Good morning.  Scott
19  Gleason on behalf of Ms. Ruiz.
20           THE COURT:  And where are you?
21           MR. GLEASON:  I'm at the Lawrence District Court
22  outside of a courtroom.
23           THE COURT:  Okay, so you can hear us?
24           MR. GLEASON:  Yes, I can.
25           THE COURT:  I'm told we have the worst audio in the
```

```
 1    building, soon to be fixed, hopefully in February, but let us

 2    know if you can't hear, all right?

 3              MR. GLEASON:  Thank you very much, Judge.

 4              THE COURT:  Okay, great.  So why don't we be seated

 5    and swear in the Interpreter.

 6              (Interpreter Hadad duly sworn. )

 7              THE COURT:  All right, so I understand -- well, first

 8    of all, this is a pretrial, but, second of all, I understand

 9    that we may be doing a plea colloquy.  Is that correct,

10    Mr. Grimaldi?

11              MR. GRIMALDI:  It is, yes.

12              THE COURT:  First, I don't know if Ms. Ruiz wanted to

13    stay here for that plea or we should do what I'll call the

14    pretrial piece of it first.

15              MR. BOLAND:  In lieu of Attorney Gleason on hold, I

16    think we should do the pretrial first.

17              THE COURT:  All right, would that be helpful?

18              MR. BOLAND:  I guess that would be his call, if he can

19    hear me.

20              THE COURT:  Mr. Gleason?

21              MR. GLEASON:  Yes, your Honor, that would be.  Thank

22    you.

23              THE COURT:  What time is your hearing up in Lawrence?

24              MR. GLEASON:  Judge, I was called for trial at 9:00

25    o'clock this morning, and they have permitted me to take care
```

1   of this business first.

2          THE COURT:  All right, so pretrial, here's what's

3   happening:  I'm about to impanel another trial tomorrow.

4   Basically I'm told it's about a week.  Unfortunately, Mr. Mark

5   Shea, who is the defense attorney, had a death in his family,

6   so we are not impaneling today; we're impaneling tomorrow,

7   which is something we're not usually allowed to do, but I

8   didn't want to lose the week.  I don't know exactly when this

9   case -- Rob Richardson and Mark Shea, if you want to give them

10  a call, they're the ones who understand it better than I.  I

11  think there's a really good chance that we will be done by next

12  Monday.  It's not a long trial.  That said, I was thinking of

13  at least impaneling your case in the afternoon next Monday,

14  which I think might be feasible, and then we could get going on

15  Tuesday with the evidence.  So it just depends.  If worst comes

16  to worst, I'll bump it a week till December 10.

17          Yes?

18          MS. FOLEY:  That would be fine, your Honor.

19          MR. GLEASON:  Excuse me, your Honor.  You just faded

20  out.

21          THE COURT:  I'm saying it will either start next

22  Monday or a week from Monday, depending on what my trial that

23  I'm going to be on this week, how long that lasts.

24          MR. GLEASON:  Whatever works for you, your Honor, is

25  fine with me and my client.

1          THE COURT:  Thank you.

2          MS. FOLEY:  Your Honor, my only issue is, I have to

3    have surgery on my hand.

4          THE COURT:  Oh.

5          MS. FOLEY:  And I can either do it on December 3 or

6    December 10.  I had asked for December 10 because of this

7    trial, but if there's any uncertainty, the government would

8    prefer to just start on December 10 so I can take care of the

9    surgery on the 3rd and be ready on the 10th.  Otherwise I

10   probably won't --

11         THE COURT:  This guy only does it on Mondays?  Is that

12   it?

13         MS. FOLEY:  Yes, only on Mondays, and then it gets

14   into the holidays, which would be a disaster, but considering

15   the uncertainty with --

16         THE COURT:  Well, have you talked with Mr. Richardson?

17   He'd know better than I would.

18         MS. FOLEY:  I have not.  I wasn't aware --

19         THE COURT:  I prefer to start December 3 because there

20   is something that I need to do on the -- I think it's

21   December 13 and 14, so then I'd have to sort of start the 10th

22   and maybe jump over to the week of the 17th.

23         MS. FOLEY:  The parties agree that this case will last

24   no more than three days.  We can definitely get this trial done

25   in three days.

1          THE COURT:  I'm gone the 13th and the 14th is the

2     thing, so they may be out deliberating and they may be closing,

3     so --

4          MS. FOLEY:  That's fine.  I just wanted to -- because

5     if the other trial does go into it, it's --

6          THE COURT:  Well, at this point I'm planning on doing

7     it December 3.

8          MS. FOLEY:  Okay, your Honor.

9          THE COURT:  So if for some reason -- well, let me just

10     say, Ms. Graber, there are two of you.  If for some reason it

11     goes later, it goes into the following week, will she be able

12     to -- have you been in the office long enough?

13          MS. GRABER:  I've been in the office eight months,

14     your Honor, and I've done a trial with Ms. Foley.

15          THE COURT:  You're a pro, you're a pro, you're a pro.

16          MS. FOLEY:  It's honestly just, you know, trying to

17     schedule the --

18          THE COURT:  I understand, and I'm sorry.  I'm going to

19     try and do it on the 3rd, but, truthfully, it's Rob

20     Richardson's --

21          MS. FOLEY:  And we will consult with him, and if it

22     looks like it's going to last much longer than the week, then

23     the government will file a motion and alert the Court to --

24          THE COURT:  Or if worst comes to worst, we'll do it on

25     the 10th, and if I have to be out of town for two days, I will.

1          MS. FOLEY:  Okay.

2          THE COURT:  And it will just jump into the week of the

3    17th kind of thing.

4          MS. FOLEY:  That would be fine.  Your Honor, may I ask

5    one other consideration from the Court.  I have to be in D.C.

6    the evening of December 4, which is the Tuesday evening.

7          THE COURT:  Yes.

8          MS. FOLEY:  I plan to come back first thing on the

9    Wednesday morning, the 5th.  Could we possibly start on the

10   Wednesday at 10:00 o'clock instead of 9:00 o'clock?

11         THE COURT:  I will definitely think about it, but I

12   also don't know why cocounsel can't do it.

13         MS. FOLEY:  It would just be the optics of the jury

14   for, you know, for me not to be present at the start, and I am

15   planning to come back on a very early shuttle on --

16         THE COURT:  I don't have strong feelings about it,

17   but, you know, can I say something?  I basically commuted from

18   Washington for six years.  Don't count on the plane.  Just

19   saying.  I am not an advertisement for the domestic air carrier

20   industry.  At least half of my planes were canceled or delayed.

21         MS. FOLEY:  Yes.

22         THE COURT:  So I'm just saying, even if you get up at

23   the crack of dawn, there's no guarantee.

24         MS. FOLEY:  Right.  It's just an event that I can't

25   not attend, and so --

1          THE COURT:  I get it.  I've been there.  Fair enough.

2    Just don't count on it.

3          MS. FOLEY:  Ms. Graber will be ready to go on Monday

4    morning.

5          THE COURT:  There's a 10:00 o'clock shuttle, I've been

6    on that too, at night, so, anyway, okay.

7          So, anyway, right now all I have is your witness list.

8    How long do you think the case will be?

9          MS. FOLEY:  Three days.

10         THE COURT:  Three days?

11         Does the defense have any witnesses at this point that

12   you know about for Ms. Ruiz?

13         MR. GLEASON:  No, your Honor.  Just Ms. Ruiz.

14         THE COURT:  Yes, I understand it's just going to be

15   Ms. Ruiz, at least if the plea goes through.  Otherwise, if

16   there are two people, we reshuffle this whole thing.  It could

17   be a much longer trial.

18         But let me just ask you this:  Let me start with, what

19   is the case about with respect to Ms. Ruiz?

20         MS. FOLEY:  Yes, your Honor.  In 2017 a cooperator who

21   was in Puerto Rico passed along the name of Delarosa Arias as a

22   person who was interested in purchasing and selling large

23   quantities of heroin.  That cooperator in Puerto Rico

24   introduced a cooperator in the Massachusetts area to

25   Mr. Delarosa.  The cooperator and Mr. Delarosa began

1    communicating over the phone -- all the calls were recorded --

2    negotiating the purchase of more than 1 kilogram of heroin.  As

3    Mr. Delarosa explained to the cooperator, he at the time did

4    not -- he was waiting to receive a load.  They agreed to meet

5    together in person.  At that meeting, Ms. Ruiz drove

6    Mr. Delarosa to the meeting.  The cooperator is in the car.

7    They discuss in detail the cost of a kilo of heroin, the fact

8    that he wanted to purchase 2 kilograms of heroin.  Mr. Delarosa

9    talked about he was waiting to obtain it.  At some point the

10   cooperator, when the details were getting discussed, said he

11   didn't want to talk about it in front of Ms. Ruiz, and at that

12   point she confirmed to the cooperator she was in on it.

13            THE COURT:  Well, what are the words that were used?

14            MS. FOLEY:  "He is to me what you are to him."  And I

15   don't have the transcript in front of me.

16            THE COURT:  So this case basically rests on that

17   statement?

18            MS. FOLEY:  The recorded statement of the

19   Defendant Ruiz, the fact that she drove him there, the fact

20   that she confirmed that she understood why she was there and

21   what was being negotiated.

22            Fast forward about three weeks, Mr. Delarosa calls the

23   cooperator, says he had just returned from New York and had the

24   drugs.  They agreed to meet on a certain date at a certain

25   time.  Ms. Ruiz drives Mr. Delarosa to the meeting.  In the

1    back, inside of sealed cereal boxes of Apple Jacks and Fruit

2    Loops were the 2 kilograms of heroin.  When the cooperator got

3    in the car, Ms. Ruiz looked at him and motioned to the bags.

4    He looked in the bags, ripped one open, and there was a kilo of

5    heroin inside of it.

6          He got out of the car, which signaled to the agents

7    that the drugs were in the car.  They tried to arrest.  They

8    moved in on the car.  Ms. Ruiz at first would not get out of

9    the car and had to be forcibly removed.  Agents found two

10   cellphones in her purse along with some notes.  On those notes

11   were the numbers of two phones, which were currently being

12   intercepted over another ongoing wiretap investigation out of

13   Texas, and also bus tickets in her name and Mr. Delarosa's name

14   indicating that they had traveled to New York, Philly, Atlanta

15   in the days prior to the drugs being seized, which is

16   consistent with Mr. Delarosa's telling the cooperator he had

17   just returned and had the drugs and was ready to meet.

18         THE COURT:  All right, so that you will put in through

19   these -- it looks as if you're putting those in only through

20   DEA agents and Homeland Security agents.  Is the cooperator

21   testifying?

22         MS. FOLEY:  He is going to be testifying.

23         THE COURT:  So this is not a complete witness list?

24         MS. FOLEY:  No, your Honor.  The government, just for

25   safety purposes, does not list the names of cooperating

1    witnesses on its publicly filed witness list, but I did inform

2    the defense that the cooperator will be testifying, and they do

3    have the cooperator's file which was produced by HSI.

4         THE COURT:  All right, so there's that one extra

5    witness?

6         MS. FOLEY:  Yes, your Honor.

7         THE COURT:  All right, now I'm not convinced that it's

8    going to only be three days.  So I'm just saying, if this was

9    just a transcript, it would be one thing, but it's -- so you

10   have one extra witness, but it's a cooperator, so I'm going to

11   assume that that's going to be half a day, the cooperator.

12        MS. FOLEY:  The government believes he will probably

13   be on the stand for three hours.

14        THE COURT:  Yes, of course.  And then so if we impanel

15   and do openings, that could take half a day.  Then I've got

16   five people --

17        MS. FOLEY:  The other witnesses are pretty quick.

18        THE COURT:  I'm just saying that that's already -- and

19   then I need closings and whatever.  You can't get out of it

20   without a week, I mean, is basically the way it goes.  There's

21   deliberations --

22        MS. FOLEY:  I'm eternally optimistic about it.

23        THE COURT:  -- on half days.  And Maryellen has the

24   afternoons too filled because everyone always pleads or cancels

25   on me, so we have the afternoons full, or continues the trial.

1          So at this point, from the defense point of view, how

2     long do you think the trial will be?  Mr. Gleason?

3          MR. GLEASON:  Judge, I'm in the vicinity of three days

4     myself, but having heard, I don't disagree with your Honor's

5     assessment.  It appears on that representation that we may be

6     in excess of three days.

7          THE COURT:  All right.  And at this point do you know

8     of any witnesses, or is it primarily going to be a

9     cross-examination of the cooperator and challenging, you know,

10    whether it hits reasonable doubt?

11         MR. GLEASON:  Judge, I just believe it will be a

12    challenge to the government's case and their burden to prove

13    beyond reasonable doubt, and I anticipate, if there is any

14    witness from the defense, it would be only be the defendant.

15         THE COURT:  All right.  And, of course, that's always

16    an open possibility, but we'll add another half a day, so --

17         MS. FOLEY:  And, your Honor, depending on how this

18    comes in, if Ms. Ruiz was going to testify, the government does

19    have additional evidence of ongoing drug-trafficking

20    involvement and money laundering involvement of the defendant

21    that predates this --

22         THE COURT:  Well, you'd better file a --

23         MS. FOLEY:  It would only be impeachment of the

24    defendant if she takes the stand, and Mr. Gleason is aware

25    of --

1          THE COURT:  All right, you've notified?

2          MS. FOLEY:  Yes.

3          THE COURT:  All right.  So, okay.  So let me just say

4     this:  Circling back, you'll give us all the proposed jury

5     instructions and verdict form and the like.  I think there's

6     not much else we need to deal with on a preliminary pretrial.

7     It sounds like it's a definite trial, but it sounds like this

8     to me, that if we get going on the 3rd, especially with the

9     delayed start on the 4th, there is no way you're going to

10    finish on the 10th.  So my current thought process is that

11    perhaps what we should do is start on the 10th, and then I will

12    jump over -- I have to be two days somewhere else, Thursday and

13    Friday or something like that, and then we will go into the

14    week of the 17th.  I don't know a way around it.  And since it

15    doesn't seem to matter to the defendant, I think that's --

16          MR. GLEASON:  That's fine, your Honor.

17          THE COURT:  Otherwise you're going to lose the 10th,

18    you are, with the delayed start, et cetera, on the 4th.

19          MS. FOLEY:  Mr. Gleason, call me if there's any

20    possible plea.

21          THE COURT:  So I think at this point what we'll do --

22    especially since our case for the 10th is going to plead,

23    right?

24          MS. FOLEY:  Yes.

25          (Discussion between the Court and Clerk.)

1          THE COURT:  So I think what we'll do is, we'll make
2    this on the 10th.
3          MS. FOLEY:  All right, thank you.
4          THE COURT:  I don't see that happening for you if you
5    really need the surgery and can't bump it.
6          (Discussion between the Court and Clerk.)
7          THE COURT:  Okay, is it okay with you, Gabriel?
8          THE INTERPRETER:  Yes.
9          THE COURT:  Does Ms. Ruiz need an interpreter?
10         MR. BOLAND:  She does, your Honor.
11         THE COURT:  Okay, okay.  Okay, so I think I'll just go
12   right into the plea.
13         All right, do you want to leave at this point?
14         MR. BOLAND:  Yes, Judge.
15         THE COURT:  We'll exclude time under Speedy Trial.  Is
16   that agreed upon?  Do I have any Speedy Trial issues here --
17         MS. FOLEY:  No, your Honor.
18         THE COURT:  -- whether it's the 3rd or the 10th?
19         MR. GLEASON:  No, your Honor.
20         THE COURT:  And there are no preliminary issues from
21   the defense?
22         MR. GLEASON:  Not at this juncture, your Honor.
23         THE COURT:  Okay, there we go.
24         MS. FOLEY:  All right, thank you.
25         THE COURT:  Thank you.

```
 1              MR. BOLAND:  Thank you, Judge.  Thank you, your Honor.
 2              THE COURT:  All right, so do you want to take the
 3      plea, Maryellen?
 4              THE CLERK:  Sir, could you please stand.  Can you
 5      raise your right hand.
 6              (Defendant Delarosa Arias duly sworn.)
 7              THE CLERK:  You have previously pled "not guilty" to
 8      an indictment charging you with Count 1, conspiracy to possess
 9      with intent to distribute and to distribute heroin, all in
10      violation of Title 21, U.S.C., Section 846; and Count 2,
11      possession with intent to distribute and distribution of
12      heroin, all in violation of Title 21, U.S.C., Section 841.  Do
13      you now wish to change your plea?
14              THE DEFENDANT:  Yes.
15              THE CLERK:  How do you plead to Count 1 and Count 2,
16      guilty or not guilty?
17              THE DEFENDANT:  Guilty.
18              THE COURT:  All right.
19              THE CLERK:  You can be seated.
20              THE COURT:  Mr. Gleason?
21              THE CLERK:  He's off the phone.
22              THE COURT:  He's good.  Okay, I just wanted to make
23      sure he knew he could leave.  Okay, all right, thank you.
24              Sir, do you understand you're still under oath, and if
25      you answer any of my questions falsely, your answers can later
```

```
 1    be used against you in another prosecution for perjury or
 2    making a false statement?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  What is your full name?
 5              THE DEFENDANT:  Dalnovis Rafael Delarosa Arias.
 6              THE COURT:  Do you go by any false names?
 7              THE DEFENDANT:  A nickname.
 8              THE COURT:  All right what's your nickname?
 9              THE DEFENDANT:  Danny.
10              THE COURT:  Okay.  Where were you born?
11              THE DEFENDANT:  Santo Domingo.
12              THE COURT:  Are you a citizen of the Dominican
13    Republic?
14              THE DEFENDANT:  Yes, I'm a Dominican citizen.
15              THE COURT:  Before you plead guilty, do you want to
16    speak to someone from your country?
17              THE DEFENDANT:  No.
18              THE COURT:  How old are you?
19              THE DEFENDANT:  Forty-seven.
20              THE COURT:  How far did you go in school?
21              THE DEFENDANT:  I went to the third year in high
22    school.
23              THE COURT:  Can you read and write in Spanish?
24              THE DEFENDANT:  Yes.
25              THE COURT:  Can you understand English?
```

1            THE DEFENDANT:  No.

2            THE COURT:  Has someone interpreted the indictment for

3    you?

4            THE DEFENDANT:  No.

5            THE COURT:  Has someone explained to you in Spanish

6    what the charges are against you?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Do you understand you're pleading guilty

9    without a plea agreement?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Have you been treated recently for any

12   mental illness or addiction to narcotic drugs?

13           THE DEFENDANT:  I haven't had treatment.

14           THE COURT:  Are you a drug addict?

15           THE DEFENDANT:  I have used them, but I'm not an

16   addict.

17           THE COURT:  Are there any medications you should be

18   getting that you're not getting?

19           THE DEFENDANT:  I believe I could use some medication,

20   as I am diabetic.

21           THE COURT:  Have you not been getting medication for

22   your diabetes?

23           THE DEFENDANT:  No.

24           THE COURT:  Have you asked for it?

25           THE DEFENDANT:  Yes.

 1              THE COURT:  Do you know whether you're Type 1 or
 2      Type 2?
 3              THE DEFENDANT:  Type 2.
 4              THE COURT:  All right, so what we need to do is -- did
 5      you know about this, Mr. Grimaldi?
 6              MR. GRIMALDI:  I did not.
 7              THE COURT:  Perhaps we can bring this to the attention
 8      of the Marshals Service.
 9              Which facility are you being held in?
10              MR. GRIMALDI:  Plymouth.
11              THE COURT:  So we'll let them know that he needs to be
12      evaluated for Type 2 diabetes.
13              Do you feel well enough today?
14              THE DEFENDANT:  Yes.
15              MR. GRIMALDI:  Thank you, your Honor.
16              THE COURT:  Have you been satisfied with the
17      representation of your attorney?
18              THE DEFENDANT:  Practically, no.
19              THE COURT:  This is where we've been before.
20              MR. GRIMALDI:  It is where we've been before.  May I
21      have a moment, your Honor?
22              THE COURT:  Yes.
23              (Discussion between Mr. Grimaldi and the defendant.)
24              MR. GRIMALDI:  I'm sorry, your Honor.
25              (Discussion between Mr. Grimaldi and the defendant.)

1          MR. GRIMALDI:  Your Honor, we may have resolved the

2     issue.

3          THE COURT:  Have you been satisfied with the

4     representation of your attorney?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You sure?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Has he pressured you into pleading guilty?

9          THE DEFENDANT:  Not exactly, and not directly pressure

10    from him but --

11         THE COURT:  But what?

12         THE DEFENDANT:  It's either I do this or I go to

13    trial.

14         THE COURT:  That's the correct choice.  Do you want to

15    plead guilty, or do you want to go to trial?

16         THE DEFENDANT:  I want to plead guilty to make things

17    easy.

18         THE COURT:  I don't want you to plead guilty unless

19    you want to do that because we have a trial scheduled in the

20    next week or two.  Don't make it easy for me.  This is about

21    you.

22         THE DEFENDANT:  I understand.

23         THE COURT:  Do you want to go to trial, or do you want

24    to plead guilty?

25         THE DEFENDANT:  I want to plead now.

1          THE COURT:  Do you feel as if you're doing this of
2     your own free will or because you're being pressured by an
3     attorney?
4          THE DEFENDANT:  Truly, I've always been in agreement
5     with doing a plea to the possession charge but not to the
6     conspiracy charge, but I see there's no other option for me,
7     and for me to plead guilty to possession, I also need to plead
8     guilty to conspiracy.
9          THE COURT:  Yes, the government has the right to press
10    the charge.  So today do you want to plead guilty to both
11    counts?
12         THE DEFENDANT:  Yes.
13         THE COURT:  Do you feel as if anyone has made you any
14    promises to get you to plead guilty?
15         THE DEFENDANT:  No.
16         THE COURT:  Do you understand there's no plea
17    agreement?
18         THE DEFENDANT:  Yes.
19         THE COURT:  Do you feel as if your attorney has
20    explained all the options to you?
21         THE DEFENDANT:  Yes.
22         THE COURT:  Do you understand that he would be your
23    attorney at trial if you want to put the government to its
24    burden of proof beyond a reasonable doubt?
25         THE DEFENDANT:  Yes.

1          THE COURT:  And do you understand that Ms. Ruiz, you

2    could go to trial with Ms. Ruiz either December 3 or

3    December 10?

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  And is it your choice right

6    now that you're satisfied that the lawyer has explained to you

7    what your choices are?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  And I understand you're not

10   happy that you have those choices, but are you otherwise

11   satisfied with the representation of your attorney?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Why don't I ask the government to state

14   the penalties that can be imposed.

15         MS. FOLEY:  Yes, your Honor.  On both counts of the

16   indictment, the defendant faces a maximum term of imprisonment

17   of life, a maximum fine of $10 million, a maximum term of

18   supervised release of life, deportation consequences based on

19   the conviction of both counts, and, as charged in the

20   indictment, the defendant also faces a mandatory minimum period

21   of 10 years incarceration and a $100 special assessment per

22   count of conviction.

23         THE COURT:  And the 10 years is triggered by what

24   amount?

25         MS. FOLEY:  One or more kilograms of a substance

1    containing heroin.

2         THE COURT:  And what is his criminal history?

3         MS. FOLEY:  I believe it to be Criminal History

4    Category I.

5         THE COURT:  So he has the opportunity to do the safety

6    valve?

7         MS. FOLEY:  He does.  He declined.

8         THE COURT:  All right.  And what are the Sentencing

9    Guidelines, if you know them?

10        MS. FOLEY:  120 to 121 months.

11        THE COURT:  All right, so he's basically looking at

12   the mandatory minimum?

13        MS. FOLEY:  Yes.

14        THE COURT:  So do you understand that those are the

15   penalties that you are likely facing?  And do you understand

16   you have the opportunity for a safety valve?

17        THE DEFENDANT:  Yes, I understand.

18        THE COURT:  And have you explained that to him,

19   Mr. Grimaldi?

20        MR. GRIMALDI:  Yes.

21        THE COURT:  And you have that right up until the day

22   of sentencing.  Do you understand that?

23        THE DEFENDANT:  I do understand it, but I'm not in

24   agreement with some of the things that are being requested of

25   me.

1          THE COURT:  I understand that, but I just want to make

2     sure you understand that the trial will be December 3 and

3     December 10, and sentencing probably won't be for another three

4     months, so you will have the right all the way up until

5     sentencing to do the safety valve, which would get you below

6     that mandatory minimum.  Do you understand that?  And I'll ask

7     you about that again.

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.

10          THE DEFENDANT:  In case that I went to trial, what

11     would be the penalty then?

12          THE COURT:  If you went to trial, you would lose

13     acceptance of responsibility, which is three levels.  I'm not a

14     hundred percent sure how that Guideline plays out.

15          So have you done the Guidelines if he's convicted?

16          MR. GRIMALDI:  It's been some time, I must say.

17          MS. FOLEY:  Your Honor, he's Level 25 with acceptance

18     and safety valve, which is 57 to 71 months.

19          MR. GRIMALDI:  That's right.

20          THE COURT:  All right.  But if he goes to trial and

21     gets convicted, you lose the three levels for acceptance.

22          MS. FOLEY:  That is correct.

23          THE COURT:  So have you given him that alternative

24     calculation, Mr. Grimaldi?

25          MR. GRIMALDI:  I don't have it at my ready, I must

1    say.

2              THE COURT:  It's probably -- what did you say?

3              MS. FOLEY:  It would be Level 28.  If he only receives

4    the safety valve, it would be Level 28.

5              THE COURT:  If he doesn't have a safety valve --

6              MS. FOLEY:  So Level 25 is with acceptance of

7    responsibility and safety valve, which is 57 to 71 months.

8              THE COURT:  Right, but if it's otherwise, it's --

9              MS. FOLEY:  If he does not safety valve, then it's

10   10 years.

11             THE COURT:  Right.  If he, though, goes to trial and

12   loses, is there another three levels on that that makes it go

13   up?

14             MS. FOLEY:  No.

15             THE COURT:  No, there is not because it's so low to

16   begin with.

17             MS. FOLEY:  Level 30 is just the drug weight, which is

18   1 to 3 kilograms of heroin, which is 120 to 121 months.

19             THE COURT:  All right, so the acceptance doesn't do

20   much for him.

21             MS. FOLEY:  It does not.

22             THE COURT:  All right.

23             MR. GRIMALDI:  I think Level 30 is 97 to 121.

24             MS. FOLEY:  But because of the 10-year floor, yes.

25             THE COURT:  So the three levels, what traps him is the

```
 1   mandatory minimum?
 2             MR. GRIMALDI:  Yes.
 3             THE COURT:  All right, do you understand that?
 4             THE DEFENDANT:  Yes.
 5             THE COURT:  Even if you go to trial, if you're
 6   acquitted, you walk free, but if you're not acquitted -- well,
 7   that's not quite true.  You may be deported, but, in any event,
 8   you won't be put in prison, but you're looking at the 10 years
 9   because of the statutory mandatory minimum.  Do you understand
10   that?
11             THE DEFENDANT:  Yes.
12             THE COURT:  All right.  So do you understand that --
13   what was the question you asked me before?  Did I explain the
14   answer to you?  In other words, the acceptance of
15   responsibility doesn't do much for you here because of the
16   statutory mandatory minimum.
17             MR. GRIMALDI:  His question essentially was, if I
18   could rephrase it, is what he might receive after trial if
19   convicted.
20             THE COURT:  If convicted, you'd probably be stuck with
21   the 10-year mandatory minimum, unless you did the safety valve.
22   Do you understand?
23             THE DEFENDANT:  Yes.  The problem with the safety
24   valve is that I'm unsure that if he asks questions, where if I
25   lie, that would be used against me, but if I tell the truth,
```

1  they are going to think that I'm lying because in fact I'm not

2  in agreement with some of the things that the prosecutor

3  described in terms of Ms. --

4      THE COURT:  Let me just say, at some level there may

5  be disputes as to whether you're telling the truth or not, but

6  I make that decision, not the prosecutor.  I don't know because

7  I know nothing about your case really, but I make that

8  decision, not the prosecutor.  Do you understand that?

9      THE DEFENDANT:  Yes.

10      THE COURT:  All right, I want to make sure you

11  understand that, and that basically if you decide to do the

12  safety valve proffer and there's a disagreement about whether

13  it applies, I make the decision.  Okay?

14      THE DEFENDANT:  Okay.

15      THE COURT:  All right.  And I want you to spend some

16  time again with Mr. Grimaldi in discussing that after this

17  plea, all right?  Because the difference in the sentence is

18  dramatic.  All right?

19      THE DEFENDANT:  I understand.

20      THE COURT:  In any event, do you understand that if I

21  accept this plea, this will result in your deportation back to

22  the Dominican Republic after you've served your prison

23  sentence?  Do you understand that?

24      THE DEFENDANT:  I understand, but --

25      THE COURT:  Unless there's an opportunity for some

1    sort of an asylum claim, it will be a deportation.

2            THE DEFENDANT:  Okay.

3            THE COURT:  So at this point I want to go through what

4    happens if I accept this plea.  I will send this to the

5    Probation Department, which will decide what the Sentencing

6    Guideline range is.  Do you understand that?

7            THE DEFENDANT:  Yes.

8            THE COURT:  And I'll hear about you as a person.  I'll

9    hear about the crime and the circumstances of the crime.

10   Probation will propose a Sentencing Guideline range, and I will

11   use that as a starting point for any sentence.  Do you

12   understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  And then your attorney can ask for a

15   variance, although he is also bound by that statutory mandatory

16   minimum, but the government can ask for a variance upward, and

17   I'll impose a sentence.  Do you understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  And you can appeal the sentence if you

20   disagree with it, but you can't withdraw your guilty plea.  Do

21   you understand that?

22           THE DEFENDANT:  Yes.

23           THE COURT:  All right.  Now, let me also discuss with

24   you the rights you're giving up.  As you know, we have a trial

25   planned.  You can just go to trial.  You've got a great lawyer.

1    You can just go to trial.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And at this point a jury of twelve people

4    chosen at random from the community would have to decide that

5    you're guilty beyond a reasonable doubt before you could be

6    convicted.  Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  The government always bears the burden of

9    proof beyond a reasonable doubt.  Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you understand you have the presumption

12   of innocence, that you're giving up the presumption of

13   innocence by pleading guilty?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand that you have a right to

16   an attorney at every stage of the proceedings?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you understand you don't have to

19   testify against yourself?

20             THE DEFENDANT:  Yes.

21             THE COURT:  On the other hand, you could testify on

22   your own behalf if you chose to do so.  Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you understand your attorney could

25   subpoena witnesses on your behalf if he chose to do so, and he

1    could also cross-examine the government's witnesses, including

2    the cooperator?  Do you understand that?

3             THE DEFENDANT:  Yes.

4             THE COURT:  And understanding all these important

5    constitutional rights, do you still want to plead guilty?

6             THE DEFENDANT:  Yes.

7             THE COURT:  All right, I'm going to have the

8    government state the evidence and ask you -- you heard a little

9    bit before when she was talking at the pretrial, but I think

10   you should state it again.  And can I see counsel at sidebar

11   for one minute.

12   SIDEBAR CONFERENCE:

13   ████████████████████████████████████████████

14   ██████████████████████████████████████████████████

15   ██████████████████████████████████████████████

16   ██████████

17   ████████████████████████████████

18   ████████████████████████████████

19   ██████████████████████████████████████

20   ██████████████████████████████

21   ████████████████████████████████████████████████████

22   ██████████████████████████████████████████████████████

23   ████████████████████████████████████████████

24   ████████████████████████████████████████████████

25   ██████████████████████████████████████████████████████





```
 1            (Discussion between Mr. Grimaldi and the defendant.)
 2            MR. GRIMALDI:  Your Honor, we're ready to proceed.
 3            THE COURT:  All right.  Will the government please
 4       state the evidence it would introduce at trial.
 5            MS. FOLEY:  Your Honor, if the government were to
 6       proceed to trial, it would prove beyond a reasonable doubt with
 7       confident evidence that in June of 2017, the Drug Enforcement
 8       Administration and Homeland Security investigators began
 9       investigating the drug-trafficking activities of the defendant,
10       Dalnovis Delarosa, after receiving information from a
11       confidential source based in Puerto Rico that the defendant was
12       selling large quantities of heroin from the Lawrence,
13       Massachusetts, area.  The confidential source in Puerto Rico
14       connected another HSI cooperating source in Massachusetts with
15       the defendant via a telephone call.  In June of 2017, the
16       cooperating witness spoke with the defendant, and the
17       conversation and all other conversations were recorded.  During
18       that call, Delarosa told the cooperator that he had multiple
19       kilograms of heroin for sale.
20            On July 13, 2017, the cooperating witness and the
21       defendant agreed to meet in person to negotiate the previously
22       discussed heroin transaction.  On that day, Codefendant Minerva
23       Ruiz drove the defendant to the prearranged location in
24       Lawrence to meet with the cooperating witness.  The cooperating
25       witness got into Codefendant Ruiz's Honda Civic, and she began
```

1   driving.  The meeting inside the car was audio and video

2   recorded.  During that call, the defendant told the cooperating

3   witness that he was waiting to receive a shipment of drugs.

4   During the meeting, the cooperating witness and Mr. Delarosa

5   began discussing the price of the sale for a kilogram of heroin

6   and also discussed fentanyl, and the agreed-upon price was

7   $60,000 per kilogram.

8          At some point during the conversation inside the car,

9   the cooperating witness hesitated to talk further about the

10  details because Codefendant Ruiz was driving.  At that point

11  Ruiz made it clear to the cooperator that she was involved with

12  the defendant in this deal.

13         After that deal, the cooperating witness spoke with

14  Mr. Delarosa a number of times in also recorded calls.  On

15  August 22, 2017, the defendant called the cooperator and told

16  him he had returned from New York and was ready to meet with

17  the cooperator, and that he had 2 kilograms of heroin to sell

18  for $60,000 per kilogram.  The following day the cooperating

19  witness and the defendant again spoke by phone, and they agreed

20  to meet at a certain location to conduct the transaction.

21         On August 24, 2017, Codefendant Minerva Ruiz drove the

22  defendant, again in her own car, to the prearranged location.

23  When the cooperating witness got into the car, he sat in the

24  backseat.  Codefendant Ruiz motioned to a bag that was a Market

25  Basket plastic shopping bag that contained two cereal boxes

1    inside that had been heat sealed shut.  The cooperating witness

2    opened one of the boxes and saw what was inside was a

3    brick-shaped object wrapped in black tape.

4          When the cooperating witness got out of the car, it

5    indicated to officers that the drugs were inside of the car,

6    and agents moved in to make the arrest of Ruiz and the

7    defendant.  Inside of the two cereal boxes in the back agents

8    found a brick of a substance that later tested positive for

9    heroin inside of the two cereal boxes.  Agents also recovered

10   two cellphones from Ruiz --

11         THE COURT:  How much was the weight, you said?

12         MS. FOLEY:  The combined weight was 1,756 grams of

13   heroin.

14         THE COURT:  Which is over 1 kilo?

15         MS. FOLEY:  Yes, your Honor.  One box contained

16   877.9 grams, and the other box contained 878.2 grams of heroin.

17         Agents recovered two cellphones from Minerva Ruiz and

18   one cellphone from the defendant.  The defendant's phone was

19   the same phone that he had used to call the cooperating

20   witness.  Agents also recovered from Defendant Ruiz's purse

21   Greyhound bus travel receipts and an itinerary.  The receipts

22   and itinerary, which were in both the defendant's and Ruiz's

23   names, were for travel from New York to Atlanta on August 12

24   through 13th, and agents also recovered a separate itinerary in

25   Ruiz's name for a Greyhound bus trip from Georgia to

1     Pennsylvania on August 19.

2             Agents also executed a search warrant at 27 Milton

3     Street, which was the residence where the defendant was living

4     with Ruiz, or where Ruiz was living.  From Ruiz's bedroom,

5     agents recovered a fraudulent United States Permanent Residence

6     Identification Card bearing Delarosa's photograph and the name

7     Julio Castillo.  His records confirmed that Julio Castillo's

8     identity belonged to a Guatemalan child that had been born in

9     2005 and who was not the defendant.

10            Agents also recovered from Ruiz's bedroom a sheet of

11    paper containing handwritten names and phone numbers.  Two of

12    the numbers on that handwritten list had been intercepted over

13    another wiretap investigation that was conducted by the DEA in

14    Texas.  At the time of the arrest, Delarosa gave agents a

15    different address of his residence.  However, he would not give

16    a certain apartment, so no search was conducted there.

17            And that would be the evidence in the government's

18    case in chief.

19            THE COURT:  All right, do you disagree with any of

20    that?  Do you disagree with any of the government's statement

21    of the facts?

22            (Discussion between Mr. Grimaldi and the defendant.)

23            THE COURT:  Do you disagree with the evidence that the

24    government just recited?

25            (Discussion between Mr. Grimaldi and the defendant.)

1          THE COURT:  Well, do you disagree with the

2    government's evidence that you were involved in a conspiracy to

3    distribute heroin?

4          THE DEFENDANT:  I was involved, but --

5          THE COURT:  And did you possess heroin with intent to

6    distribute it?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And did you agree that the amount of the

9    heroin that you possessed and that was the part of the

10   conspiracy involved over a kilogram of heroin?

11         THE DEFENDANT:  Yes.

12         THE COURT:  So what is the part you disagree with?

13         THE DEFENDANT:  Ms. Minerva had no knowledge of what I

14   was doing and my activities.

15         THE COURT:  And do you agree that there was a

16   conspiracy with someone other than Minerva and the person

17   cooperating with the government?

18         THE DEFENDANT:  Yes, but not with her.

19         THE COURT:  Okay.

20         THE DEFENDANT:  She did not know about my activities.

21         THE COURT:  So was there somebody else other than the

22   cooperator in the car?

23         THE DEFENDANT:  In that moment with me?  No.

24         THE COURT:  No, but somebody else, say in Texas?

25         THE DEFENDANT:  I suppose.

1              THE COURT:  Yes or no?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  So let me read the charge in

4    the indictment, and I'm going to deal with what he just told

5    me.  So do you plead guilty from in around June, 2017, and

6    continuing through August 24, 2017, in Lawrence, Charlestown,

7    and elsewhere in the District of Massachusetts, that you,

8    Dalnovis Delarosa Arias, and another person, not the

9    cooperator, did knowingly and intentionally combine, conspire,

10   confederate, and agree with each other, and with persons known

11   and unknown to the grand jury, to possess with intent to

12   distribute and to distribute heroin, a Schedule I controlled

13   substance, in violation of 21 U.S. Code, Section 841(a)(1)?  Do

14   you plead guilty knowingly, freely, and voluntarily to

15   conspiracy to possess with intent to distribute heroin?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And, as I understand it, the disagreement

18   here is who you were conspiring with, that you were conspiring

19   with someone in Texas and maybe somebody else but not with

20   Minerva.  Is that right?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Is that right?

23             THE DEFENDANT:  Yes, but not in Texas.

24             THE COURT:  Well, where is the person?

25             THE DEFENDANT:  In the Dominican Republic.

1          THE COURT:  And do you agree that the offense involved

2     1 kilogram or more of a mixture and substance containing a

3     detectable amount of heroin, a Schedule I controlled substance,

4     in violation of Section 21 United States Code,

5     Section 841(b)(1)(A)(i)?  Do you plead guilty knowingly,

6     freely, and voluntarily to the conspiracy count?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And do you plead guilty to Count 2 of

9     possession with intent to distribute and distribution of

10    heroin, that on or about August 24, 2017, in Lawrence,

11    Charlestown, and elsewhere in the District of Massachusetts,

12    that you did knowingly and intentionally possess with intent to

13    distribute heroin, a Schedule I controlled substance, and that

14    it involved 1 kilogram or more of a mixture and substance

15    containing a detectable amount of heroin, in violation of

16    federal law?  And, once again, that the amount was a Schedule I

17    controlled substance, and that it was reasonably attributable

18    to and reasonably foreseeable by you was over a kilogram?  Do

19    you plead guilty knowingly, freely, and voluntarily?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And is there a drug forfeiture allegation

22    that's alive here, or is this just one of your --

23          MS. FOLEY:  I think it's just the standard.

24          THE COURT:  Just in case you find something.  We'll

25    deal with it at sentencing?

```
 1            MS. FOLEY:  Yes.

 2            THE COURT:  All right, so now is an important moment.

 3     Do you plead guilty knowingly, freely, and voluntarily to this

 4     indictment?

 5            MR. GRIMALDI:  And may I have a moment with him, your

 6     Honor?

 7            THE COURT:  Yes.  I would like you to spend time

 8     because we can always go to trial.  I've got a trial ready.

 9     I'm ready.  You've got a great set of lawyers.  We're ready to

10     go if he wants it, okay?

11            (Discussion between Mr. Grimaldi and the defendant.)

12            MR. GRIMALDI:  We'll move forward with the plea, your

13     Honor.

14            THE COURT:  All right.  So at this point, this is a

15     much longer plea colloquy than I usually have, and indeed it's

16     the second time around.  And I understood the hesitation with

17     respect to his -- I guess the mother of his child who's sitting

18     right here.  So I do find that the plea is knowing and

19     voluntary, as we restated it, and that there's a conspiracy

20     with someone other than the mother of his child and other than

21     the cooperator, somebody from the Dominican Republic; and also

22     clearly he possessed with intent to distribute and distribution

23     of heroin.  There's overwhelming evidence of that because of

24     the wire and the cooperator.  And certainly they got the

25     1 kilogram in the back of the car.  So I find the plea is
```

1  knowing and voluntary, supported by an independent basis in

2  fact concerning each of the essential elements.

3          And I add only the following:  There's been some

4  hesitation about satisfaction with counsel, but I find that's

5  because of the choice he has, not because of his satisfaction

6  with the attorney.  And so he doesn't like the choice, and that

7  is the law.  But I do want to talk to him and counsel at

8  sidebar for one minute.

9  SIDEBAR CONFERENCE WITH DEFENDANT DELAROSA ARIAS:

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



18          (End of sidebar conference.)

19          THE COURT:  So we have a sentencing date.

20          THE CLERK:  March 5.

21          MR. GRIMALDI:  I'll be out of the country, actually.

22          THE COURT:  Fair enough.  I'm doing it myself at

23   various points.  When do you want to do it?

24          MR. GRIMALDI:  I could do the following week later in

25   the week, or I could do the week of the 18th.  I'm completely

```
 1   open.
 2              THE CLERK:  The 14th?
 3              MS. FOLEY:  That's fine, your Honor.
 4              THE CLERK:  The 14th at 2:30, is that okay?  Or do you
 5   want to do the following week?
 6              MR. GRIMALDI:  Could we do the following week just so
 7   I can meet with him at the jail and make sure that we're --
 8              THE CLERK:  The 21st at 2:30.
 9              MR. GRIMALDI:  Very good.
10              THE CLERK:  On the 21st, Gabriel, can you write that
11   down.
12              MR. GRIMALDI:  Can we do the 19th or the 20th?
13              THE CLERK:  The 19th?
14              MR. GRIMALDI:  Okay, very good.
15              THE COURT:  Where is he?  He's at Plymouth?
16              MR. GRIMALDI:  Yes.
17              THE COURT:  And if you could follow up with them,
18   please, and make sure he's getting that diabetes medication.
19              MR. GRIMALDI:  Yes, I will.
20              THE COURT:  Maybe they don't know.
21              MR. GRIMALDI:  Yes, I will speak with them.  Thank you
22   very much, your Honor.
23              THE CLERK:  All rise.
24              So, guys, I put it for Tuesday, March 19 at 2:30 for
25   sentencing.
```

1          (Adjourned, 10:53 a.m.)

2                    C E R T I F I C A T E

3


4
UNITED STATES DISTRICT COURT )
5 DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON               )
6

7

8          I, Lee A. Marzilli, Official Federal Court Reporter,

9  do hereby certify that the foregoing transcript, Pages 1

10 through 44 inclusive, was recorded by me stenographically at

11 the time and place aforesaid in Criminal No. 17-10281, United

12 States of America v. Dalnovis Delarosa Arias and Minerva Ruiz,

13 and thereafter by me reduced to typewriting and is a true and

14 accurate record of the proceedings.

15          Dated this 14th day of December, 2018.

16

17

18

19

20
          /s/ Lee A. Marzilli
21        _____
          LEE A. MARZILLI, CRR
22        OFFICIAL COURT REPORTER

23

24

25