```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )     Criminal Action
         v.                         )     No. 17-10281-PBS
                                    )
DALNOVIS DELAROSA ARIAS and         )
MINERVA RUIZ,                       )
                                    )
              Defendants.           )
_____)

**MEMORANDUM AND ORDER**

January 11, 2019

Saris, C.J.

Defendant Minerva Ruiz faces two charges arising from an alleged sale of heroin on August 24, 2017. The Government's primary evidence at trial will be testimony from a cooperating witness (CW) who negotiated the sale and took possession of the heroin when the sale was complete. The Government expects that he will testify that the defendant was present when he negotiated the sale and that she showed him by gesture where the drugs were hidden.

On November 26, 2018, one week before the trial was supposed to begin, the Government disclosed the name of the CW to the defendant's attorney, Scott Gleason. Upon receiving the CW's name, Attorney Gleason notified the Government that he currently represents the CW in a state court proceeding to

1

vacate an unrelated drug conviction. On November 29, the
Government moved to disqualify Attorney Gleason from
representing the defendant based on this conflict of interest.

After the defendant expressed an interest in waiving the
conflict at a hearing on December 19, the Court appointed
independent counsel to represent her in making this decision.
She seemed concerned about the money she and her family had
already paid Attorney Gleason. The Court told her it would
appoint counsel if she could not afford a new attorney. After
consulting with independent counsel and her family, the
defendant informed the Court at a hearing on January 10, 2019
that she wanted to waive the conflict. The CW was also present
at the hearing, and he stated he would not agree to waive the
conflict. Immediately after the CW's testimony declining to
waive the conflict, in an attempt to rectify the conflict,
Attorney Gleason offered in Court to cease his representation of
the CW.

The Sixth Amendment guarantees the right of a criminal
defendant to "have the Assistance of Counsel for [her] defense."
U.S. Const. amend. VI. This guarantee includes "the right to
have an attorney of one's own choosing." United States v.
Laureano-Perez, 797 F.3d 45, 55 (1st Cir. 2015) (quoting United
States v. Lanoue, 137 F.3d 656, 663 (1st Cir. 1998)). Thus,
although a defendant has the "right to conflict-free counsel,"

United States v. Ponzo, 853 F.3d 558, 574 (1st Cir. 2017), she may waive that right and continue the case with conflicted counsel, Yeboah-Sefah v. Ficco, 556 F.3d 53, 68 (1st Cir. 2009).

A defendant's right to an attorney of her choice, however, is not "absolute." Laureano-Perez, 797 F.3d at 55. Because the purpose of the Sixth Amendment is to "ensure that criminal defendants receive a fair trial," the right to counsel aims "to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom [she] prefers." Wheat v. United States, 486 U.S. 153, 159 (1988) (quoting Strickland v. Washington, 466 U.S. 668, 689 (1984)). Relatedly, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Id. at 160. Accordingly, "where a court justifiably finds an actual conflict of interest," as defined by the applicable ethical rules, "there can be no doubt that it may decline a proffer of waiver." Id. at 162. A district court has "broad latitude" to determine when disqualification is required. United States v. Alfonzo-Reyes, 592 F.3d 280, 294 (1st Cir. 2010).

Under Rule 1.7 of the Massachusetts Rules of Professional Conduct, "a lawyer shall not represent a client if the

3

representation involves a concurrent conflict of interest." Mass. R. Prof'l Conduct 1.7(a). A lawyer has a concurrent conflict of interest if "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." Id. A lawyer may continue to represent a client when a concurrent conflict of interest exists only if "each affected client gives informed consent, confirmed in writing. Id. 1.7(b)(4). Many courts have held that an attorney cannot dump one client like a "hot potato" without consent to eliminate a concurrent conflict of interest. See Altova GmbH v. Syncro Soft SRL, 320 F. Supp. 3d 314, 318-19 (D. Mass. 2018) (noting that, while the Supreme Judicial Court recently declined to decide whether this "hot potato" doctrine applies in Massachusetts, a number of courts have adopted it).

Remarkably, although the issue was flagged on November 29, Attorney Gleason continues to represent both clients. This creates a concurrent conflict of interest. Defense counsel has filed a challenge to vacate the CW's only conviction in state court. Advocating for the CW's motion to vacate his conviction is directly contrary to Gleason's duty to zealously fight for the defendant at trial. The CW's prior drug conviction can be used to impeach him at trial. See Fed. R. Evid. 609.

Furthermore, Attorney Gleason will have to cross-examine the CW at trial, which will put him directly adverse to a client. See Mass. R. Prof'l Conduct 1.7(a) cmt. 6. The defendant's waiver alone does not cure this conflict because the Massachusetts Rules of Professional Conduct require both affected clients to agree to waive the conflict and the CW has refused to do so. See id. 1.7(b)(4). Attorney Gleason offered to terminate his representation of the CW at the hearing on January 10, but dropping one client without consent to eliminate the conflict does not cure the ethical problem.

Since Attorney Gleason is operating in violation of the state ethics rules, the Court may reject the defendant's waiver. See Wheat, 486 U.S. at 162. The conflict here is serious. The CW is the key witness against the defendant, and his prior drug conviction is a powerful way to impeach him. There is a substantial risk that Attorney Gleason's loyalty to the CW will impede his effectiveness in vigorously cross-examining the CW at trial. To ensure that the defendant has an "effective advocate" at trial and the trial is "conducted within the ethical standards of the profession," the Court believes that Attorney Gleason cannot continue to represent the defendant. See id. at 159-60.

## **ORDER**

Accordingly, the Government's motion to disqualify Attorney Gleason (Docket No. 101) is **ALLOWED**.

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge